**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **PORTER BRIDGE LOAN COMPANY, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 09-CV-593-JED-FHM |
| v. ) | |
| ) | |
| **NANCY G. HENTGES, Trustee of the Nancy** ) | |
| **G. Hentges Trust; MARK MARTENS, AND** ) | |
| **FREDERICK H. NORTHROP,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

The Court has for its consideration the "Motion to Vacate Order" (Doc. 123) filed on behalf of defendant, Frederick H. Northrop and his attorney, Stephen J. Capron. Although styled a "Motion to Vacate Order," the filing is submitted under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(a), which authorizes the party to "serve and file objections to the order" entered by a magistrate judge on a pretrial non-dispositive issue. *See* Fed. R. Civ. P. 72(a). Accordingly, the Court will treat the motion as an objection under Fed. R. Civ. P. 72(a).

**I.    Background**

Plaintiff, Porter Bridge Loan Company, Inc. ("Porter Bridge") has a default judgment against defendant Frederick H. Northrop ("Northrop") and other defendants, for a total amount of $572,219.69, plus post-judgment interest, plus costs. (Doc. 23). A significant amount of the judgment has been collected, but a substantial balance remains. (*See* Doc. 121, ¶ 10). Pursuant to Fed. R. Civ. P. 69(a)(2), a judgment creditor "may obtain discovery from any person -- including the judgment debtor -- as provided in these rules. . . ." Porter Bridge sought post-judgment discovery of Northrop, much of which was directed to discovery of the existence of

assets and any transfers of assets that could or should be available for satisfaction of Porter Bridge's judgment. On February 12, 2012, the Magistrate Judge to whom the matter was referred (the Honorable T. Lane Wilson) granted Porter Bridge's motion to compel Northrop to provide complete responses to several interrogatories and document requests, including requests regarding assets of and disbursements from the Frederick H. Northrop Trust (the "Trust"), a trust for which Frederick H. Northrop is both the Trustor and the Trustee. At that time, Judge Wilson denied Porter Bridge's request for fees and costs, without prejudice. (Doc. 104).

Northrop provided supplemental responses to the discovery requests. Subsequently, Porter Bridge asserted that there remained significant deficiencies in Northrop's responses and, following a hearing on August 6, 2012, Judge Wilson ordered the parties' counsel to meet and confer to attempt a resolution of the remaining deficiencies. (*See* Doc. 114). Following the ordered meet and confer, Northrop provided a second supplemental discovery response, but Porter Bridge continued to argue that the discovery responses were inadequate. Judge Wilson then ordered supplemental briefing on the motion to compel and the alleged remaining discovery deficiencies. (Doc. 116). In its supplemental briefing, Porter Bridge asserted a number of remaining deficiencies and requested "that Northrop be sanctioned pursuant to Fed. R. Civ. P. 37(b)(2), and that Porter be reimbursed its attorney fees and expenses for the many efforts it has undertaken over the past year to obtain discovery to which it is rightfully entitled under the Federal Rules of Civil Procedure and Oklahoma law regarding collection of judgments." (Doc. 117 at 23). Northrop responded that he had provided more information than he was required to provide and that, "[h]aving run out of money to collect against Dr. Northrop on the judgment, Plaintiff is trying to create a basis for sanctions." (Doc. 118).

On October 25, 2012, Judge Wilson entered an Order granting in part and denying in part Porter Bridge's supplemental brief regarding the motion to compel and ordered Northrop to provide

additional information responsive to the original discovery requests. (Doc. 122). The Order included a "monetary sanction in the total amount of $1,500.00 on Northrop and its counsel, jointly and severally, as a sanction for [the] failure" to fully respond to discovery as previously ordered in February 2012. Judge Wilson further found that Northrop's deficiencies in responding to Porter Bridge's discovery requests were "not substantially justified and there are no circumstances that make an award of expenses unjust." (*Id.* at 11-12). Northrop objects to the Order (Doc. 122) on several grounds, which are discussed in Section III, below.

## II. Standard of Review

Federal magistrate judges may hear and determine pretrial discovery matters that are not dispositive of the case, and when appropriate, they will issue a written order of the decision. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1).[1] The district court is to review any objections to the order and may set aside or modify the order only where it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1). The district court "[must] affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006), quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988).

---

[1] Notwithstanding the references in Rule 72(a) and 28 U.S.C. § 636(b) to magistrate judges conducting "pretrial" matters, magistrate judges may conduct other non-dispositive matters after trial and judgment. *See, e.g., J.P. Morgan Chase Bank, N.A. v. PT Indah Kiat Pulp and Paper Corp.*, 854 F. Supp.2d 528, 535 (N.D. Ill. 2012) (post-judgment discovery in collection proceedings may be referred to a magistrate judge) (citations omitted); *F.D.I.C. v. LeGrand*, 43 F.3d 163, 167 (5th Cir. 1995) (district court properly referred motions relating to post judgment discovery); *Bergeson v. Dilworth*, 749 F. Supp. 1555, 1562, n.3 (D. Kan. 1990) ("Courts considering the meaning of the term 'pretrial' as used in [§ 636] have not defined this with respect to the time of trial, but rather have interpreted this to refer to 'a matter unconnected to the issues litigated at trial. . . .'") (citations omitted). Moreover, pursuant to Fed. R. Civ. P. 69(a)(2), post-judgment discovery proceeds like pre-trial discovery under the discovery rules. The Court finds that such discovery was properly referred to the magistrate judge. In any event, Northrop specifically filed his objections "pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A)," and he acknowledges that certain post-trial referrals, like the referral in this case, are appropriate. (*See* Doc. 126 at 2).

3

### III. Discussion

#### A. The Order Compelling Discovery

After conducting a thorough analysis of each discovery request as to which Porter Bridge alleged a continuing deficiency, the Magistrate Judge granted in part and denied in part Porter Bridge's request that the Magistrate Judge again order Northrop to fully respond to discovery requests. The Court has reviewed the Order, the underlying discovery requests at issue, and the other information submitted with the parties' supplemental briefing (Doc. 117, 118, 119), and has reviewed and considered the objections asserted by Northrop. The Court finds that Judge Wilson's Order contains a thorough, measured, and accurate analysis of the discovery issues relating to Northrop and his Trust, the information sought by Porter Bridge, and the discovery responses by Northrop. After examining the record of the proceedings, the Court agrees with Judge Wilson's findings that Northrop's discovery responses remained deficient notwithstanding the prior order compelling responses and the repeated opportunities for Northrop to supplement the responses in order to comply with its discovery obligations and the earlier order to do so. The Order is not clearly erroneous or contrary to law. A discussion of Northrop's specific objections to the Order is set forth by issue below.

##### 1. The Order for a Complete Response to Interrogatory No. 12 Regarding Trust Payments of Northrop Expenses

Interrogatory No. 12 requested that Northrop "[i]dentify and describe all instances in which the Trust has paid any account payable or other expense or liability of Northrop during the Relevant Time Period." In the February 2012 responses, Northrop stated that the bank statements include any transactions where the Trust "paid any account payable or other expense or liability of Northrop." (*See* Doc. 117-4, Interrogatory No. 12 and Response to same). Judge Wilson noted that the bank statements reflected several debit card purchase for expenses that

4

appear personal in nature, as well as electronic transfers of lump sums of money and transfers (including of "Cash") via handwritten checks marked only with "transfer" in the memo line, and also noted that there was a lack of detail (i.e. the names of the recipient accounts receiving electronic transfers, identification of where those accounts are located). Judge Wilson also found that the descriptions were vague and that they do not "describe" the transactions fully, such that Northrop had *still* not fully responded to Interrogatory No. 12.

Northrop argues that the Magistrate Judge made an improper assumption that those Trust bank transactions involved expenses or liability "of Northrop." The Court finds that objection to be without merit. That objection ignores the plain language of Interrogatory No. 12, which clearly seeks an identification and description of *all* transactions involving payments from the Trust on behalf of Northrop. Porter Bridge is entitled to the detailed information that reflects the transactions in order to determine whether there were fraudulent transfers. Northrop's objection also disregards the purpose of the discovery sought, which was at least in part directed to determining the existence of any assets upon which Porter Bridge could execute to collect on its judgment and to determine whether any fraudulent transfers had been made of assets. The additional transaction information which Northrop has been ordered to provide is clearly within the scope of that Interrogatory request, and Judge Wilson committed no error in ordering that additional information.

> 2. *The Order to Provide Additional "Information" in Response to Document Request Nos. 1, 4, 8, 12 and 15*

Northrop also objects to the Order because, in a few places, it contains directives that Northrop shall provide additional "information," rather than "documents," in response to document requests. The Court has reviewed the complained of references to "information" and does not agree with Northrop's analysis or find any error in the Order. Judge Wilson noted that

Porter Bridge's document request Nos. 1, 4, 8, 12, 15, and 16 seek "information" regarding large transfers of money to unidentified accounts via electronic transfers and to individuals via hand-written checks to "Pat Northrop" or "Cash." (Doc. 122 at 7). In footnotes, the Order quotes the actual document requests, and the Court does not find any error in summarizing all six (6) of those document requests as seeking "information" rather than "documents." Judge Wilson also found that those requests and the information sought by the document requests "draws into question the sufficiency of the information provided in the bank statements and the sufficiency of the supplementing documents such as the checks, credit card statements, and other billing statements," and found that the documents produced are not sufficient to respond to the requests. (*Id.*). The Order then directs Northrop to "provide detailed information regarding any transaction in which funds were transferred by check to 'Pat Northrop' or 'Cash,' including the specific purpose and reason for the transfer," and ordered that Northrop "provide detailed information regarding the electronically transferred money to the unnamed accounts." (*Id.*).

There should be documents that reflect the missing information, including documents identifying the purpose for the large transfers of money to unidentified accounts (by way of example, invoices, requests for payment, additional statements, check endorsement information, detailed records of accounts, checkbook or accounting records). Moreover, as noted in the Order, the missing information that cannot be gleaned from the documents produced by Northrop in response to those document requests is also related to the insufficient bank statements and other records, which lacked sufficiently detailed information in response to Interrogatory No. 12. Thus, the Court concludes that the Order properly directs the production of that additional detail, by production of documents and inclusion of the missing detailed information necessary to fully respond to Interrogatory No. 12.

       *3.*     *The Order to Provide AT&T and ONG Documents in Response to Document Request Nos. 14, 15, and 16*

In responding to discovery, Northrop produced certain documents relating to AT&T and ONG accounts. Northrop admits that he is an obligor on those accounts, but denies that he pays those accounts, and he therefore argues that any additional documents relating to the AT&T and ONG accounts are not responsive to Document Request Nos. 14, 15 and 16. (Doc. 123 at 7). Whether or not Northrop actually pays those accounts in no way diminishes his obligation to provide documents related to them. The Court finds that the documents sought *are* responsive to the requests. His admitted "obligor" status on those accounts renders those accounts to be within the scope of at least document request No. 16, which calls for production of all "documents identifying the recurring monthly accounts payable of Northrop." Moreover, the Court notes, as did Judge Wilson, that Northrop produced those AT&T and ONG account records (albeit in an incomplete fashion) in response to Porter Bridge's discovery requests, which reflects an acknowledgement by Northrop that such documents *are responsive*.

       *4.*     *The Order to Produce Additional Documents Relating to the Chase Credit Card Account*

With respect to a Chase credit card account allegedly used in connection with Northrop's medical practice,[2] the Order directs that Northrop "produce all account information for the Relevant Time Period, including how the account is paid each month and copies of account statements." (Doc. 122 at 8). Northrop objects, claiming that the records are not responsive to Porter Bridge's discovery requests and that he has already produced the account statements. Once again, Northrop produced some documents relating to the Chase credit card account in response to Porter Bridge's discovery requests, an acknowledgement that those documents *are*

---

[2] The statements that were produced indicate that the account is listed in the name of "Fred Northrop." (Doc. 118-2 at 13 [sealed]).

7

*responsive*. Moreover, Porter Bridge's discovery requests were directed to locating payments made by, on behalf of, or for Northrop. Records relating to the account would appear to be responsive, as is indicated by Northrop's production of certain records relating to that account. The Court finds that the Order is clear: Northrop is to provide all documents relating to the account for the relevant time frame, including "all documents reflecting the manner of paying that account each month." There is no error with respect to that part of the Order.

### B. The Sanctions Order

The Order also imposed a monetary sanction of $1,500.00 on Northrop and his counsel, jointly and severally. (Doc. 122 at 12). Northrop and his counsel object and argue that Judge Wilson erred in awarding sanctions because (1) Northrop complied with discovery obligations and thus is not culpable, (2) to the extent that the Court finds a failure to completely comply with discovery obligations and the prior order to produce, such failure did not cause prejudice to Porter Bridge and has not "substantially interfered with the judicial process," (3) "there was no warning . . . that a failure to produce these records would result in harsh sanctions or any penalty," and (4) even if a sanction is warranted, sanctions are not warranted against Northrop's counsel, because there is no evidence that counsel "advised" Northrop to engage in any improper conduct and he was not separately given an opportunity to be heard on the issue of sanctions. (Doc. 123 at 15-17). The Court disagrees on each of these points.

As noted above, the Court finds no error in Judge Wilson's determination that Northrop failed to comply with his discovery obligations and the Judge's prior order in February 2012. Contrary to Northrop's assertion, the Court finds that the failure to fully comply with discovery and the February 2012 order compelling complete discovery responses did prejudice Porter Bridge, in that it caused extraordinary delay and expense in order for Porter Bridge to obtain

another order requiring Northrop to comply with obligations it should have complied with months before. Northrop failed to comply with the first order granting the motion to compel, which required additional proceedings (including an additional hearing, supplemental briefing, and the entry of the Order which is the subject hereof). The Court also rejects the notion, much less the contention, that there was no warning that "harsh sanctions or any penalty" would be imposed, because Porter Bridge specifically sought sanctions in its supplemental briefing. Under the circumstances and in light of the months-long delay in Northrop's providing responsive information and the resulting multiplication of proceedings, the Court finds that the $1,500 sanction was not "harsh" or improper, but was instead measured, reasonable, and restrained.

The Court also finds no error in the imposition of sanctions, jointly and severally, upon Northrop and his counsel. The record reflects that Northrop's counsel was involved in the delay in compliance with discovery, filed papers asserting that categories of documents were not responsive despite the fact that some within those categories had clearly been produced *in response* to Porter Bridge's discovery requests, and argued that documents identifying Northrop as "obligor" were not responsive to discovery calling for payments made on accounts payable of Northrop (*see, e.g.,* Document Request No. 16) even though certain documents relating to those accounts were produced as being responsive to Porter Bridge's discovery.

The Court also rejects the arguments of Northrop's counsel that he should not be held accountable for sanctions for due process reasons or because he did not "advise" any misconduct under Fed. R. Civ. P. 37(a)(5)(A). Porter Bridge sought, and the Order imposes, sanctions on the basis of Fed. R. Civ. P. 37(b)(2), *not* Rule 37(a)(5). Rule 37(b)(2) provides that, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Courts have "'very broad discretion to use sanctions where

9

necessary to insure . . . that lawyers and parties . . . fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial.'" *Lee v. Max Int'l,* 638 F.3d 1318, 1320 (10th Cir. 2011), quoting *In re Baker*, 744 F.2d 1438, 1440 (10th Cir. 1984).

The sanctions that may be imposed under Rule 37(b)(2) for a failure to comply with a discovery order include severe sanctions, such as contempt, directing that certain matters are established for purposes of the action, and other sanctions impacting the merits of the dispute. *See* Fed. R. Civ. P. 37(b)(2)(A)(i) through (vii). Judge Wilson did not impose any such harsh sanctions, but instead imposed a monetary sanction under Rule 37(b)(2)(C), which provides:

> *Payment of Expenses.* Instead of or in addition to the orders above [in Rule 37(b)(2)(A)(i) – (vii)], the court must order that the disobedient party, **the attorney advising that party**, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C) (bold added). Nothing in this rule requires -- as a predicate to imposing an expense sanction against a party's attorney -- a finding that the attorney advised "misconduct," as is asserted in the objections by Northrop and his counsel. (Doc. 123 at 17).[3] In any event, the Magistrate Judge found the "root cause of the discovery disputes to be Northrop

---

[3] Unlike Fed. R. Civ. P. 37(a)(5)(A), which refers to sanctions against an "attorney advising [the party's discovery] *conduct*," Rule 37(b)(2) (which was the basis for the sanctions award in this case) merely refers to the "attorney advising that party." Even under Rule 37(a)(5)(A), courts have held that the language "attorney advising such conduct" does *not* require proof of bad faith by the attorney or proof that the attorney did so advise before a court imposes sanctions against the attorney. *See, e.g., Devaney v. Continental Amer. Ins. Co.*, 989 F.2d 1154, 1161-62 (11th Cir. 1993); *Adelman v. Boy Scouts of Amer.*, 276 F.R.D. 681, 700 (S.D. Fla. 2011). Otherwise, a presumption would be read into the Rule that the Court "must impose those sanctions on the client unless the client proves that his or her attorney instigated the relevant misconduct." *Devaney*, 989 F.2d at 1161. "[T]he phrase [attorney advising such conduct] instructs that when an attorney advises a client in discovery matters, *he assumes a responsibility for the professional disposition of that portion of a lawsuit and may be held accountable for positions taken or responses filed during that process*. Sanctions exist, in part, to remind attorneys that service to their clients must coexist with their responsibilities toward the court, toward the law and toward their brethren at the bar." *Id.* at 1161-62 (emphasis added). While Mr. Capron contends he did not "advise" any misconduct, he does not deny that he "advised" his client.

10

*and* his counsel," which warranted the sanctions award. (Doc. 122 at fn. 6). That finding is not clearly erroneous or contrary to law.

The Court also rejects the argument by Northrop and his counsel that they were not afforded adequate notice that a sanction may be imposed. In its briefing, Porter Bridge expressly requested that Northrop be sanctioned "pursuant to Fed. R. Civ. P. 37(b)(2), and that Porter be reimbursed its attorney fees and expenses for the many efforts it has undertaken over the past year to obtain discovery to which it is rightfully entitled. . . ." (Doc. 117 at 23). As is set forth in the quoted language of Rule 37(b)(2) above, once a court has determined that "a party . . . [has failed] to obey an order to provide or permit discovery," the court "*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A) and (C). Thus, an award of expenses under Rule 37(b)(2) is the rule, not the exception, and Northrop and his counsel were on notice that such an award may be ordered.

Finally, the fact that Porter Bridge did not expressly seek sanctions against Northrop's counsel does not render Judge Wilson's award clearly erroneous or contrary to law. In *Devaney*, an attorney argued that the district court erred in awarding sanctions against him under Rule 37(a)(5)(A) because the party awarded sanctions had only named the client as the target of sanctions. The *Devaney* court rejected that argument, reasoning as follows:

> [T]he [sanctions] motions were sufficient to place [attorney] on notice of potential personal liability for the activities referred to therein. Rule 37 subsections (a) and (b) permit the court to impose sanctions upon a party or its attorney or both and establish no preference between these options. Because the apportionment of fault between an attorney and client is the court's responsibility, a party listing only its opponent in a motion for sanctions does not absolve the opponent's attorney of potential liability. Instead, the movant merely provides the court with the double option of holding responsible either the opponent or the attorney either

11

under the motion or *sua sponte*. Accordingly, *a motion for sanctions under Rule 37, even one which names only a party, places both that party and its attorney on notice that the court may assess sanctions against either or both unless they provide the court with a substantial justification for their conduct.*

*Devaney*, 989 F.2d at 1160 (emphasis added).[4]

Northrop's counsel submitted the discovery responses at issue, signed the relevant briefs relating to that discovery, and participated in the hearings and meet and confer discussions relating to that discovery over the course of many months. The Court finds that Mr. Capron had notice of the possibility that sanctions would be awarded for a failure to comply with discovery obligations as previously ordered by Judge Wilson.

### IV. Conclusion

Judge Wilson's Order is not clearly erroneous or contrary to law. Rather, the Order was based on a thorough and reasoned analysis of the discovery at issue, the responses submitted, the multiple hearings and submissions by the parties, and proper application of the applicable law.

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Order (Doc. 122) is **affirmed**, and the "Motion to Vacate Order" (Doc. 123) asserted by Northrop and its counsel (which has been construed as an objection to the Magistrate Judge's Order) is **denied**.

**IT IS FURTHER ORDERED** that, in light of this Opinion and Order, the Plaintiff's Application to Set Hearing on Defendant's Objection to Magistrate Judge's Order (Doc. 129) is **moot**. It was not necessary for the Court to hear arguments on the objections of Northrop and its counsel before deciding the issues presented.

---

[4] The Tenth Circuit has cited with approval the holding in *Devaney* that due process is satisfied where counsel had reason to know of the possibility of sanctions, despite the fact that the motions for sanctions named only the party and not counsel. *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 372 F.3d 1186, 1191 (10th Cir. 2004).

**DATED** this 8th day of April, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE